Filed 4/29/13  P. v. Cuevas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>ROJELIO CUEVAS,<br><br>    Defendant and Appellant. | C070790<br><br>(Super. Ct. No.<br>  11F03397) |

Appointed counsel for defendant Rojelio Cuevas has asked this court to review the record to determine whether there exist any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Counsel advised defendant of the right to file a supplemental brief within 30 days of the date of filing of the opening brief, and defendant has filed a brief claiming error.  As we will explain, we are not persuaded by his claims; further, we see no arguable error that would result in a disposition more favorable to defendant.  Accordingly, we affirm the judgment.

1

# FACTUAL AND PROCEDURAL BACKGROUND

*People's Case-in-Chief*

On May 16, 2011, while sixth grader M.D. was walking through Oki Park on her way home from school, a man with a young child walked past her and said, "[y]ou're hella sexy." M.D. then saw the same man driving a car out of a restaurant parking lot. The man said, "[c]ome here," but M.D. just kept walking; she walked really fast because she was scared.

M.D. then walked through the parking lot of a flea market. A car pulled in and blocked her path. The same man, later identified by her at trial as defendant, got out of the car and tried to grab her arm. She pulled away and ran home. When she arrived home she was crying and yelling. She told her mother that a man had walked by her, had said, "[h]ella sexy" to her, and later had tried to "snatch" her. Her mother called the police.

The next day, police officers patrolling near M.D.'s school saw a car and driver that matched the description she had provided--a gold four-door Ford Taurus and a male Hispanic with a mole on his face. The police stopped the car and identified the driver as defendant. M.D. was brought to the scene for a field show-up. She was "98 percent sure" the car was the same one that had followed her. About defendant, she said: "I don't know. I don't think that's him. I see the mole. I don't remember. I don't want to put the wrong person in jail."

The police obtained surveillance videos from businesses near the parking lots where M.D. had walked the day of her various encounters with defendant. A video of the restaurant's parking lot showed a car that looked very much like a Ford Taurus, with a white sticker on the bottom of the front windshield. Police found a very similar white sticker in the same place on defendant's car. The video also showed what looked like M.D. walking through the parking lot, and the car following. The video did not show where the car went after it left the parking lot.

Police took defendant into custody 10 days after the incident. When interviewed, he told them he had picked up his son from school and had taken him to the park to play. He originally denied seeing or talking to anyone at the park or when driving elsewhere, but eventually admitted some limited contact with M.D. He told the police that when M.D. had walked past them, he said to his son, "[o]h, she's pretty huh son." Later, when driving home, defendant saw M.D. and followed her into a parking lot. M.D. turned around when defendant's brakes squeaked loudly and he drove home. He did not speak to M.D., leave his car, grab her, or follow her to the flea market. He thought M.D. was 16 years old.

*Defense Case*

Defendant testified that, on the day of the incident, he picked up his son from kindergarten and they went to Oki Park. While entering the park, they passed M.D. walking in the opposite direction. Defendant asked his son, "[s]he's pretty, isn't she, son?" Defendant believed M.D. was 16 or 17 years old.

Twenty minutes later, defendant and his son left the park to drive home. After deciding to stop at a fast food restaurant, defendant drove through a parking lot where he noticed a female walking about 100 yards away. When he approached to within 30 to 50 feet, defendant realized that the female was the girl he had seen near Oki Park. He applied his car's brakes, which made a loud screeching sound. M.D. turned and saw defendant again. Defendant perceived that M.D. had been startled. Without saying anything to her, he drove out of the parking lot and went straight home.

Defendant initially lied to the police about seeing M.D., because he was mortified at the thought of confessing that he had looked at a girl who possibly was under 18 years of age. Defendant eventually told the police what had happened and expressed his willingness to take a polygraph examination.

On cross-examination, defendant admitted that he had found M.D. physically attractive and that, in his conversation with the police, he had called her "eye candy." However, her appearance had not excited him.

*Verdicts and Sentence*

The jury found defendant guilty of child annoyance. (Pen. Code,[1] § 647.6, subd. (a).) It found him not guilty of false imprisonment by menace (§ 237, subd. (a)) and the lesser included offense of simple false imprisonment (§ 236). The court suspended imposition of sentence and placed defendant on probation for five years on the condition, among others, that he serve 179 days in custody (time served). The court ordered him to pay a $300 sex crime fine (§ 290.3) plus penalty assessments, a $120 restitution fine (§ 1202.4), a $40 court operations fee (§ 1465.8, subd. (a)(1)), a $30 court facilities assessment (Gov. Code, § 70373), a $287.78 booking fee and a $59.23 classification fee (Gov. Code, § 29550.2, subd. (a)), and a $227 presentence report fee.

## DISCUSSION

Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra,* 25 Cal.3d 436.) Defendant has filed a supplemental brief contending, without cites to the record, that: (1) the trial court erred when it excluded several photographs of M.D. that had been posted to her social media accounts, and (2) the People committed misconduct in closing argument.

I

*Exclusion of Photographs*

Defendant contends the trial court erred when it excluded several photographs of M.D. posted to her social media accounts. He claims these photographs were relevant to

---

[1] Further undesignated statutory references are to the Penal Code.

rebut the People's argument that M.D. had no reason to falsely accuse defendant of the charged crimes. Defendant argues these photographs were provocative and revealed that M.D was seeking attention from adult males, demonstrating she had a motive to accuse strangers of attempting to harm her. We find no abuse of discretion.

### A. Background

Pretrial, the trial court marked for identification 23 photographs of M.D. wearing various articles of clothing (defense exhs. A-W) and three multiple-page printouts from social media Websites (defense exhs. X-Z). The People objected to admission of the photographs as irrelevant, unduly prejudicial, and improper impeachment on a collateral matter. The People argued the photographs' only theoretical relevance was to show that M.D. appeared older than her actual age of 12 years, which could be a defense to a charge of violation of section 647.6; however; defendant had not seen any of the photographs before the alleged incidents, so his actions could not have been informed by them.

The defense sought to impeach M.D. with the photographs. Defense counsel explained that the photographs were "put out on a public forum and on a Website to trigger comments, and [M.D.] showed herself off to people. [¶] And my theory of defense in this matter is she's lying about the allegation that he tried to snatch her and kidnap her because she wanted attention, and they clearly show a pattern of seeking attention. [¶] They are somewhat sexual in nature. She's provocatively dressed in several of them. She's making kissing motions in one or two of the photographs. She's actually hugging on somebody who appears to be an adolescent. [¶] In one of the photographs . . . it shows some of . . . the comments that she's receiving from apparently adult men as a result of the photographs that she's putting on the internet for people to see her." Counsel expressed concern that M.D. is "going to be presented as somebody that she's not, and the jury is not going to have a sense of how she really behaves and tries to draw attention to herself on a fairly consistent basis." Counsel reiterated that "the crux of the defense" is that M.D. "likes to draw attention, and that's the whole basis

for her claiming that [defendant] tried to kidnap her when there's no clear evidence to corroborate it." The trial court deferred ruling on the issue until M.D. testified on direct examination.

At a hearing held during M.D.'s testimony, defense counsel requested permission to ask M.D. about one or two of the photographs "in light of her demeanor in court, her appearance in court, and her testimony as well." The People argued the evidence was substantially more prejudicial than probative within the meaning of Evidence Code section 352. The trial court found the evidence "extremely prejudicial, does not appear [to] be probative or relevant to the issues in this case and has the potential to confuse the jury" and excluded the evidence.

Prior to sentencing, defense counsel moved for a new trial on the ground the photographs were erroneously excluded. Noting that defendant had admitted in his testimony that he had believed M.D. was under age 18, the trial court denied the motion.

*B.    Analysis*

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Defendant has not shown that the trial court's exercise of its discretion was unreasonable, let alone arbitrary, capricious, or patently absurd. Although he argues that, "if the jury could get a glimpse at the way [M.D.] was dressed on the day in question, they would see that my noticing [M.D.] was not unnatural or abnormal[,]" he points to no evidence that M.D. was dressed as she was in the photographs at the time of her

6

encounter with defendant.  Rather, the evidence showed only that M.D. was walking home from her elementary school at the time defendant approached her.

Further, any connection between M.D.'s behavior in placing sexually provocative photographs of herself on social media and making false accusations of kidnapping was speculative at best.  Speculative evidence is irrelevant evidence.  (*People v. Babbitt* (1988) 45 Cal.3d 660, 682.)  Because the proffered evidence regarding M.D.'s online activities was irrelevant and thus devoid of probative value, the trial court was certainly entitled to conclude the evidence was substantially more prejudicial than probative.  No abuse of discretion appears.

Defendant does not make a separate argument with respect to the denial of his new trial motion.  For the reasons explained *ante*, that motion was properly denied.

II

*Prosecutorial Misconduct*

Defendant contends the People committed prejudicial misconduct during his summation when he told the jury that M.D. "clearly looked like a child and not even close to the age of 17."  Defendant argues this statement was "absolutely false and misleading," and was prejudicial in that it "added to the jury's finding that my interest in [M.D.] was abnormal and/or unnatural."

A.    Background

In opening summation, the People argued that "the argument, the position that [defendant] took, that he didn't know that [M.D.] is from that elementary school, to me, is ludicrous.  Why?  Because you're walking about this far from a person.  He says he was looking at her body.  Fine.  You saw how she looked in court.  16?  17?  Not even close."

In closing summation, the People argued that "the idea that this individual thought that girl was 16 or 17 just doesn't make common sense.   [¶]  This is a girl with a

7

backpack, walking home from the elementary school.  He knew it.  He knew what path she was on, what street she was on.  School was out.  Here's some other kids."

The People continued:  "So if you think [defendant] knew [M.D.] was not 16 or 17, but a child from the same school where his kid was coming from, find him guilty of Count Two, because right off the bat, if you're expressing sexual intentions toward a girl you know to be in elementary school, that's unreasonable conduct.  You should find him guilty just by that."

Defense counsel did not object to any of the foregoing remarks or request that the jury be admonished to disregard any of them.

*B.      Analysis*

"A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' (*Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144, 157]; see *People v. Cash* (2002) 28 Cal.4th 703, 733.)  Under state law, a prosecutor who uses deceptive or reprehensible methods commits misconduct even when those actions do not result in a fundamentally unfair trial." (*People v. Cook* (2006) 39 Cal.4th 566, 606; see also *People v. Hoyos* (2007) 41 Cal.4th 872, 923; *People v. Ledesma* (2006) 39 Cal.4th 641, 726.)

"A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." (*People v. Thornton* (2007) 41 Cal.4th 391, 454 (*Thornton*).)

Defendant's claim of prosecutorial misconduct is forfeited by his trial counsel's failures to object to the disputed remarks and to request an appropriate admonition. (*Thornton, supra,* 41 Cal.4th at p. 454.)  Further, because the record on appeal does not

support defendant's claim that the People's argument was misleading, let alone deceptive or reprehensible, we see no prosecutorial misconduct.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.


        DUARTE        , J.


We concur:


        RAYE        , P. J.


        BUTZ        , J.